UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| THE ROTTLUND COMPANY, INC., a Minnesota corporation, | Civil No. 02-1238 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| SCOTT LARSON CONSTRUCTION, INC., a Minnesota corporation d/b/a Scott Larson Homes; SCOTT E. LARSON, an individual d/b/a Scott Larson Homes; and CHRISTINE D. LARSON, an individual d/b/a Scott Larson Homes, | |
| Defendants. | |

_____

Craig S. Krummen and David A. Davenport, WINTHROP & WEINSTINE, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, for plaintiff.

Robert T. Stich and Louise A. Behrendt, STICH, ANGELL, KREIDLER & DODGE, P.A., 250 Second Avenue South, #120-Crossings, Minneapolis, MN 55401, for defendants.

Plaintiff The Rottlund Company ("Rottlund") is a Minnesota corporation that designs, builds, markets, and sells, among other things, townhomes. Defendant Scott Larson Construction, which is owned entirely by defendants Scott Larson ("Scott") and Christine Larson ("Christine"), is also a Minnesota corporation that, among other things,

builds and sells townhomes, albeit on a smaller scale.[1] Rottlund alleges that each defendant has infringed its copyrighted building plans and is directly, contributorily, and vicariously liable for that alleged infringement. Additionally, Rottlund contends that each defendant is liable for false advertising in violation of the Lanham Act, violation of the Minnesota Uniform Deceptive Trade Practices Act, and common law unfair competition. Defendants request partial summary judgment. For the following reasons, the Court grants defendants' motion.

## BACKGROUND

Scott Larson Construction was incorporated in Minnesota in 1982. Defendant Scott Larson ("Scott") is its President, as well as the Director and Secretary of its Board of Directors. Defendant Christine Larson ("Christine") is the Vice-President of Scott Larson Construction, as well as the Treasurer of its Board of Directors. Christine also acts as the company's bookkeeper. Scott and Christine each own 50% of the Scott Larson Construction shares and are its only officers, directors, and employees. In 1983, Scott Larson Construction filed a Certificate of Assumed Name with the Minnesota Secretary of State, making it a registered "nameholder" of Scott Larson Homes.

As the original Certificate neared expiration in 1993, Christine filled out a Certificate of Assumed Name Renewal form, which Scott signed. It was then filed with the Minnesota Secretary of State. On the renewal form, Christine and Scott were listed individually as registered name holders of Scott Larson Homes. Christine and Scott

---

[1] For purposes of this motion, the Court will refer to defendants Scott Larson Construction, Scott Larson, and Christine Larson collectively as "defendants".

testified that neither intended to make any changes to the original Certificate, that inclusion of their individual names was a mistake, and that Christine misunderstood the directions on the form.  They also testified that they were unaware of the mistake until this lawsuit brought it to their attention.  On June 11, 2002, five days after the commencement of this action, Scott Larson Homes filed an amendment to its Certificate of Assumed Name, removing Scott and Christine Larson as nameholders.

In late 2000, Scott met with a team at the architectural firm Archnet, The Architectural Network, Inc. ("Archnet") to begin work on what became known as the Village Point Urban Townhomes Development ("Village Point") in Chaska, Minnesota.  A former employee of Archnet who worked on the project testified in deposition that Scott gave him a copy of a Rottlund brochure containing a sample floor plan of a town home and asked that it be used as a concept guide.  Discovery revealed that Archnet's files on the Village Point project contained some tracings that line up very closely with the sample floor plan found in a Rottlund brochure advertising their New Urban Townhomes product.[2]  Archnet's Village Point files also contained notes and drawings showing dimensions that match those of Rottlund's New Urban Townhomes product.  Those notes refer to two different unit designs as "Albany" and "Boston" units.  Rottlund's New Urban Townhomes have units named Albany and Boston.

Rottlund owns copyrights for the architectural designs and town-home product known as the New Urban Townhomes.  Rottlund contends that the defendants, acting "in

---

[2] Rottlund has constructed and sold New Urban Townhomes in multiple developments in the greater Twin Cities area.

concert," copied its copyrighted architectural plans for the New Urban Townhomes product and used them to "plan, develop, construct, advertise and sell" the Village Point project.

Scott denies suggesting that the Village Point project design be based on the New Urban Townhomes product and denies providing Archnet with a Rottlund brochure. Michael Hoefler, a principal at Archnet who also worked on the project, testified that clients frequently provide examples or ideas as starting points for projects, but denied having seen a Rottlund brochure or having used the Rottlund designs in any way in connection with the Village Point project.

Rottlund's complaint includes twenty-one counts – seven each against Scott Larson Construction, Scott Larson and Christine Larson. The seven different claims are (1) Copyright Infringement under 17 U.S.C. § 102(a)(5), (2) Copyright Infringement under 17 U.S.C. § 102(a)(8), (3) Contributory Liability for copyright infringement, (4) Vicarious Liability for copyright infringement, (5) False Advertising under the Lanham Act, (6) Violation of the Minnesota Uniform Deceptive Trade Practices Act, and (7) Unfair Competition.

Scott and Christine seek summary judgment on the direct liability copyright infringement claims, the false advertising claims, and the deceptive trade practices claims against each individually. Christine also moves for summary judgment on the claims of contributory infringement and vicarious liability. Finally, all defendants seek summary judgment on the claim of unfair competition. Aside from the unfair competition claim,

Scott Larson Construction does not seek summary judgment on the claims against it. The Court addresses each argument in turn.

## DISCUSSION

### I.   Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon

allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II.    Copyright Infringement

Architectural plans and drawings are protected by copyright law as "pictorial, graphic, and sculptural works" and "architectural work."  17 U.S.C. § 102(a)(5) & (8). Under 17 U.S.C. § 501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright. . . ."  In order to prove copyright infringement, a plaintiff must demonstrate that it owns a valid copyright, and that the defendant engaged in unauthorized copying of the work protected by the copyright. *Feist Pubs. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  It is long established that even where direct infringement cannot be proven, a defendant can be held liable for the infringing activities of another. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 432-36 (1984).  In this case, it is undisputed that Rottlund owns valid copyrights related to the New Urban Townhomes product.  In order to prevail on this motion, Scott and Christine must demonstrate that there is no genuine issue of material fact from which a jury could conclude that Scott and Christine individually are directly, vicariously, and/or contributorily liable for infringement of those copyrights.

### A. Direct infringement (Counts VIII, IX, XV, XVI)

Rottlund is suing Scott and Christine Larson in their individual capacity based on their designation as nameholders of Scott Larson Homes on the Certificate of Assumed Name Renewal form.[3] As this Court stated in its November 15, 2002 order:

> [i]t is well established that a person or corporation doing business under another name is not a separate entity, and is liable for obligations of the entity bearing that name. *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977), *aff'd*, 578 F.2d 721 (8th Cir. 1978) ("The individual who does business … under one or several names remains one person, personally liable for all his obligations.") *See Jaffe v. Nocera*, 493 A.2d 1003, 1008 (D.C. Ct. App. 1985); *Krawfish Kitchen Restaurant, Inc. v. Ardoin*, 396 So. 2d 990, 993 (La. Ct. App. 1981) (citing *Duval*); *Southern Ins. Co. v. Consumer Ins. Agency*, 442 F. Supp. 30, 31 (E.D. La. 1977).

Therefore, if Scott and Christine were doing business as Scott Larson Homes, they are individually liable for Scott Larson Homes' alleged infringement of plaintiff's copyrights. The legal question remains, however, whether mere nameholder status, without any further action, constitutes "doing business" so as to give rise to personal liability.

---

[3] Plaintiff asserts two additional theories on which it bases its claims of direct liability against Scott and Christine as individuals. Specifically, plaintiff asserts "Scott and Christine Larson can not escape direct liability since they used Scott Larson Construction, Inc. as an instrument to carry out willful and deliberate copyright infringement." Additionally, plaintiff contends "Scott and Christine Larson can not escape direct liability since they are the dominant influence in Scott Larson Construction, Inc. and determined the policies that resulted in infringement." The Court disagrees with Rottlund's contention that these theories appropriately support claims of direct liability. Rather, these theories are properly understood as versions either of vicarious liability or contributory infringement. As discussed below, vicarious liability permits a person with a financial interest in and sufficient control over the activity in question, such as the president and sole shareholder of a company, to be held liable for infringing activity. *See, e.g., Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 989 (D. Minn. 1986) (citing *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1161-62 (2nd Cir. 1971)). Contributory infringement permits a person, again such as an active board member, who knowingly induced, caused, or materially contributed to infringing conduct to be held liable therefor. *See, e.g. Demetriades v. Kaufmann*, 690 F. Supp. 289, 293-94 (S.D.N.Y. 1988).

The Court simply cannot agree with Rottlund's contention that filing a form, albeit a sworn form, with the Secretary of State that is not verified or otherwise checked for accuracy constitutes "doing business" sufficient to subject Scott and Christine to individual, direct liability. Minnesota Statutes §§ 333.01-.04 require registration of any commercial assumed names with the Secretary of State before conducting business under that name. Section 333.06 provides penalties for failure to register. The penalties include payment of $250 to the opposing party in a civil action and stay of any civil action until the certificate has been filed. Minn. Stat.. § 333.06, 333.065. The purpose of these statutes is "to protect the integrity of tradenames and to protect corporate creditors. It is not for the purpose of providing the public with a means to ascertain the correct name of an entity to properly designate it in a lawsuit."[4] *Watson v. Stonewings on the Lake*, 393 N.W.2d 518, 520 (Minn. Ct. App. 1986). Given this purpose, it is apparent that Rottlund is not the intended beneficiary of these statutes. Further, given the minimal penalties prescribed for violation of the statutes, it is apparent to this Court that the Minnesota legislature did not intend nameholder registration or non-registration to provide a basis for the potentially severe consequence associated with a strict liability reading of the statute.

Additionally, it is widely recognized that a basic purpose of incorporation is protection of the incorporators from personal liability. *See 1 Fletcher Cyclopedia of*

---

[4] Even if the statutes were intended to provide the public with a means of ascertaining who to name in a lawsuit, refusing to extend liability to Scott and Christine individually does not thwart this goal or leave plaintiff without an appropriate defendant since Scott Larson Construction remains both a nameholder and a defendant.

*Private Corporations* § *41* (2003).  Under Minnesota law, the corporate veil is not lightly pierced.  *Agristor Leasing v. Guggisberg*, 617 F. Supp. 902, 906 (D. Minn. 1985) (citing *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn. 1979)).  To impose personal liability on Scott and Christine based solely on their status as nameholders would essentially permit Rottlund to do an end run around the protections of incorporation by using the assumed name statute in a way never intended by the legislature.  Thus, the Court finds that mere nameholder status is insufficient basis to create individual liability.  Rather, Rottlund must demonstrate that Scott and Christine in fact conducted business in their individual capacities.

Scott and Christine admit that at the time this lawsuit was filed the Certificate listed both their names as individual nameholders.  However, they assert that the listing was a mistake due to Christine's misunderstanding of the directions, and thus should not be a basis for imposing individual liability for any alleged acts of the corporation.  More specifically, evidence before the Court indicates that Scott and Christine originally named only Scott Larson Construction as the nameholder of Scott Larson Homes, that they intended to renew this status, that they and the business had changed addresses shortly prior to the renewal, and that Christine believed that she needed to indicate the change of address of the directors to the Secretary of State.  Scott and Christine maintain that each acted only in a professional capacity as officers or employees of Scott Larson Construction, that there is no evidence to the contrary, and that the proper defendant of these claims is Scott Larson Construction.

Rottlund points to several documents that Scott signed with only his name rather than his name and company title and deposition testimony from an Archnet employee as evidence to the contrary. The employee testified that he had never heard of Scott Larson Construction; and that when he did business with Scott Larson, he was doing business with Scott Larson Homes. This evidence is insufficient to raise a question of material fact as to whether Scott or Christine as individuals ever did business as Scott Larson Homes.

Where, as in this case, the owner of the company has lent his name to the company and is the company's principal employee, it is often difficult to draw a line between the company and the individual. The evidence presented by Rottlund does not suggest that Archnet ever thought that it was doing business with an individual. To the contrary, it suggests that Archnet was fully aware that it was doing business with the business known to it as Scott Larson Homes.

The evidence Rottlund relies on is of such paucity that even viewing this evidence in the light most favorable to the Rottlund, the Court finds that no reasonable jury could find that either Scott or Christine personally conducted business as Scott Larson Homes or that they did not simply make a mistake in listing themselves, individually, as nameholders of Scott Larson Homes. In light of the above discussion, the Court dismisses counts VIII, IX, XV, XVI.[5]

---

[5] The preceding analysis (section I(A) is equally applicable to the claims against Scott and Christine individually for false advertising in violation of the Lanham Act, violation of the Minnesota Uniform Deceptive Trade Practices Act, and common law unfair competition. The Court therefore also dismisses counts XII, XIII, XIV, XIX, XX, and XXI.

### B.     Vicarious liability (Count XVIII)

Christine Larson also moves for dismissal of the vicarious liability claim against her as an individual. Christine contends that there is no evidence that she directly benefited from or had the ability/right to control Scott Larson Homes' alleged infringement of plaintiff's copyright as required under vicarious infringement law. Again, the Court agrees.

The theory of vicarious liability is properly applied to "prevent an entity that profits from infringement from hiding behind undercapitalized 'dummy' operations when the copyright owner eventually sues." *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir.1992). In order to establish vicarious liability, a plaintiff copyright owner must demonstrate that defendant (1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials. *Nelson Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 513 (4th Cir. 2002); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001); *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 834 (8th Cir. 1992) (same); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2nd Cir. 1971) (same); *Hard Rock Cafe*, 955 F.2d at 1150 (same); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2nd Cir. 1963) (same); *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 989 (D. Minn. 1986).

Vicarious liability may be found even where the defendant had no knowledge that copyright ownership was being violated. *Gershwin Publishing*, 443 F.2d at 1162; *Shapiro, Bernstein*, 316 F.2d at 307; *B & H Supply*, 646 F. Supp. at 989. However, "[s]ome degree of control or supervision over the individual(s) directly responsible for the infringement is of crucial importance." *Demetriades*, 690 F. Supp. at 293 (citations omitted). "Whether the defendant[] had the right and ability to control the activities which infringe on copyrights and whether [she] had a direct financial interest in the activities are issues of law." *Realsongs v. Gulf Broadcasting Corp.*, 824 F. Supp. 89, 91 (M.D. La. 1993) (citing *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F. Supp 478 (N.D. Ohio 1984)).

Rottlund contends that Christine's position as a corporate officer and employee authorized to sign contracts on behalf of Scott Larson Homes gave her the right and ability to supervise the infringing activity. The Court disagrees. The uncontradicted testimony is that Scott (with some participation from his son) was solely responsible for contacting and dealing with the architects who allegedly actually copied the plans, and for directing and overseeing the construction of the townhomes. Thus, while her position may technically have given Christine the right to supervise the allegedly infringing activity, she clearly did not have the ability. *See Ford Motor*, 646 F. Supp. at 990 (imposing liability on principal shareholder/officer actively involved in business, but not refusing to impose liability on minority shareholder/treasurer). The Court therefore dismisses the claim for vicarious liability (County XVIII) against Christine individually.

### C.     Contributory infringement (Counts XVII)

Christine moves for dismissal of the contributory infringement claim found in Count XVII.  She asserts that there is no evidence that she knew of or participated in Scott Larson Homes' alleged infringement of plaintiff's copyright as required under contributory infringement law.  The Court agrees.

In order to establish contributory infringement, a plaintiff must establish that the defendant (1) induced, caused, or materially contributed to the infringing conduct of another, and (2) knew of the infringing activity.  *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987); *Gershwin*, 443 F.2d at 1162; *see also Sony Corporation of America v. Universal City Studios, Inc.*, 464 U.S. 417, 437 (1983); *Demetriades v. Kaufmann*, 690 F. Supp. 289, 292 (S.D.N.Y. 1988); *Aitken, Hazen, Hoffman, Miller v. Empire Const. Co.*, 542 F. Supp. 252 (D. Neb. 1982); *McMillan Co. v. I.V.O.W. Corp.*, 495 F. Supp 1134 (D. Vt. 1980); 3 Nimmer § 12.04 [A].  According to a leading treatise on copyright, a defendant who has provided a copyrighted work to a third party who in turn copied that work may be liable as a contributory infringer, unless the defendant had no knowledge of the third party's intended infringement.   3 Nimmer §  12.04 [A] (citing *Herman Frankel Organization v. Tegman*, 367 F. Supp. 1051, 1054 (E.D. Mich. 1973)).

In this case, Christine participated in the town home project by providing bookkeeping services, paying bills, and occasionally signing a subcontractor contract on behalf of Scott Larson Homes.  As an initial matter, the Court is not convinced that such minor participation qualifies as material contribution to the alleged infringing activity.  However, even assuming that Christine's actions do satisfy the first prong, they do not

satisfy the second. Evidence in the record demonstrates that Christine knew that the townhomes were being designed and built. However, there is no evidence that she attended any of the design meetings with Archnet or otherwise reviewed any of the plans. There is likewise no evidence that Christine visited a Rottlund development, saw a copy of the Rottlund brochure containing the sample floor plan, or was otherwise made aware that the design of the Scott Larson Homes townhomes was similar to that of the Rottlund homes. In short, there is no evidence that in paying bills and signing the occasional contract, Christine was aware that her actions were contributing to the alleged unlawful infringement of Rottlund's copyright. *See Demetriades*, 690 F. Supp. at 293-94 (declining to impose contributory liability based on routine business calls). The Court therefore dismisses count XVII alleging contributory liability against Christine Larson.

### III. Unfair Competition (Counts VII)

Defendants move for dismissal of the common law unfair competition claims found in Counts VII, XIV, and XXI, asserting that the Copyright Act preempts them. Rottlund contends that its unfair competition claim refers to the separate torts of false and misleading designation of origin and false advertising. The Court dismissed counts XIV and XXI in section I(a), *supra*, and thus discusses only count VII.

"Unfair competition is not a tort with specific elements; it describes a general category of torts which courts recognize for the protection of commercial interests." *Zimmerman Group, Inc. v. Fairmont Foods of Minnesota, Inc.*, 882 F. Supp. 892, 895 (D. Minn. 1994) (quoting *Rehabilitation Specialists, Inc. v. Koering*, 404 N.W.2d 301, 305-

06 (Minn. Ct. App. 1987)). In order to make out a claim for unfair competition, a plaintiff must identify the underlying tort that is the basis for the claim. *Id.* In *Zimmerman*, the plaintiff alleged in his complaint that the defendant's "acts of copyright infringement separately and together with the acts of interference with contract alleged herein, constitute unfair competition." The court determined that "[t]o the extent that the unfair competition claim is based upon acts of copyright infringement, it is preempted by 17 U.S.C. § 301." *Id.* [6]

This Court applied *Zimmerman* in *Lens Crafters, Inc. v. Vision World, Inc.*, stating "[m]oreover, if the underlying tort is duplicative of another Count of the Complaint, the claim for unfair competition cannot stand." *Lens Crafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1490 (D. Minn. 1996) (citing *Zimmerman*, 882 F. Supp. at 895). Count V alleges false advertising under the Lanham Act, while count VI alleges violation of the Minnesota Uniform Deceptive Trade Practices Act by, among other things, making false and misleading statements about the origin of the product. The conduct underlying the unfair competition claims, as identified by Rottlund, is thus duplicative of other counts in the complaint and cannot stand. The Court therefore dismisses Count VII.

---

[6] The court in *Zimmerman* found the interference with contract portion duplicative of another count, and dismissed it on that ground.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Partial Summary Judgment [Docket No. 45] is **GRANTED**. Counts VII, VIII, IX, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI of the Amended Complaint [Docket No. 34] are **DISMISSED with prejudice**.

2. Defendant Christine Larson is **DISMISSED** from this case as there are no remaining claims against her.


DATED: March 4, 2004                      s/ John R. Tunheim
at Minneapolis, Minnesota.               JOHN R. TUNHEIM
                                                  United States District Judge